UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
ZURICH INSURANCE COMPANY a/s/o Adidas :
Group,                                                       :
                                                             :
                              Petitioner,                    :   16-CV-1861 (JPO)
                                                             :
              -v-                                            :   OPINION AND ORDER
                                                             :
CROWLEY LATIN AMERICA SERVICES,                              :
LLC,                                                         :
                                                             :
                              Respondent.                    :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

On March 11, 2016, Petitioner Zurich Insurance Company ("Zurich"), as subrogee of Adidas Group ("Adidas"), filed a petition to compel arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, against Defendant Crowley Latin America Services, LLC ("Crowley"). (*See* Dkt. No. 1.) Crowley now moves for judgment on the pleadings, seeking dismissal of the petition. (*See* Dkt. No. 12.) For the reasons that follow, Zurich's petition to compel arbitration is granted, and Crowley's corresponding motion for judgment on the pleadings to dismiss the petition is denied.

**I.     Background**

Adidas, on or about October 15, 2011, consigned 574 boxes of clothing to Crowley for transport from Honduras to Indiana, via the port of Gulfport, Mississippi. (Dkt. No. 1 ¶ 7.) Adidas was insured by Zurich to cover loss or damage to the clothing. (*Id.* ¶ 13.) Crowley, in turn, engaged CW Enterprises, Inc. ("CW"), a Mississippi trucking firm, to take the goods by land from Gulfport to Indiana. (Dkt. No. 10 ¶ 9.) Gramercy Insurance Company ("Gramercy") insured CW for the cargo, and Crowley was named as an additional insured on the policy. (Dkt.

No. 10-1 at 2; Dkt. No. 10 ¶ 25.)  A second insurance company, Beacon Insurance Company, Ltd. ("Beacon"), also contracted to cover Crowley's liabilities.  (Dkt. No. 15-3.)

While in transit from Gulfport to Indiana, Adidas's clothing aboard CW's truck was damaged by fire.  (Dkt. No. 1 ¶ 10.)  As Adidas's insurer, Zurich paid for the loss.  (Dkt. No. 1 ¶ 14.)  Now, as equitable subrogee, Zurich seeks to recover that amount from Crowley because of Crowley's alleged negligence in causing the damage.  (*Id.* ¶¶ 12.)

The International and U.S. Domestic Ocean Liner and Logistics Volume Transportation Agreement ("Service Agreement") between Adidas and Crowley covering the transportation at issue here contains a clause requiring the parties to submit any dispute arising from the contract to arbitration in New York City.  (Dkt. No. 5-1 § 13.)  While the Service Agreement permits Crowley to subcontract its duties, it makes clear that Crowley remains "fully liable for the due performance of its obligations under this contract."  (*Id.* § 9.)  The Service Agreement also provides that the Carriage of Goods by Sea Act of the United States of America, 46 U.S.C. app. § 1301, *et seq.* ("U.S. COGSA"), applies to claims of cargo loss.  (Dkt. No. 5-1 § 10.2.)  The contract further specifies that it shall be governed and construed in accordance with general maritime law of the United States, the FAA, the Shipping Act of 1984 as amended, 46 U.S.C. app. § 1701 *et seq.*, and, to the extent such laws are inapplicable, the laws of the State of New York.  (*Id.* § 13.)  Finally, the Service Agreement limits claims by third-party beneficiaries: "Except as specifically provided for elsewhere in this Contract, this Contract shall not be construed to confer any benefit on any third party not a party to it nor shall the Contract provide any rights to such third party to enforce its provisions."  (*Id.* § 12.4.)

Zurich initially sought recovery from Crowley in a 2012 lawsuit, which the parties voluntarily dismissed without prejudice.  *See Zurich Ins. Corp. a/s/o Adidas Grp. v. Crowley*

*Latin Am. Servs., LLC*, No. 12 Civ. 6674 (S.D.N.Y. Nov. 15, 2012).  (Zurich represents that the 2012 suit was withdrawn when the parties agreed that the matter was subject to mandatory arbitration.  (Dkt. No. 15 at 2.))  Crowley has since declined to submit to arbitration.  (Dkt. No. 1 ¶¶ 21-22.)

In August 2013, Gramercy (CW and Crowley's insurer) was deemed insolvent and ordered into liquidation.  (Dkt. No. 10-2 at 2.)  As a consequence, as provided by Mississippi law, the Mississippi Insurance Guaranty Association assumed Gramercy's liabilities.  (Dkt. No. 10 ¶ 25.)

Zurich, as subrogee of Adidas, petitions this Court to compel arbitration with Crowley on the basis of the arbitration clause in the Service Agreement between Crowley and Adidas.  (Dkt. No. 1 ¶¶ 16-23.)  Crowley moves for judgment on the pleadings, seeking dismissal of the petition, pursuant to Federal Rule of Civil Procedure 12(c).  (*See* Dkt. No. 12.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(c) provides that "a party is entitled to judgment on the pleadings 'only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'"  *Bailey v. Pataki,* No. 08 Civ. 8563, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010) (alteration in original) (quoting *Juster Assocs. v. Rutland*, 901 F.2d 266, 269 (2d Cir. 1990)).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim," and, as in a 12(b)(6) motion, the Court takes the facts alleged in the complaint as true.  *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  In a Rule 12(c) motion, the Court may consider "the complaint, the answer, [and] any written documents

3

attached to them." *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 64–65 (E.D.N.Y. 2016) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

Crowley's Rule 12(c) motion seeks to dispose of Zurich's petition to compel arbitration. "The FAA 'requires courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms.'" *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, No. 15 Civ. 8799, 2016 WL 4524510, at *2 (S.D.N.Y. Aug. 24, 2016) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The reviewing court's evaluation is limited to: "i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004). Where these requirements are met, the court must issue "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

**III.   Discussion**

The parties agree that the Service Agreement is a valid agreement to arbitrate, requiring that all disputes "arising out of or . . . connect[ed]" to the operative contract be submitted to arbitration in New York City. (Dkt. No. 1 ¶ 16; Dkt. No. 10 ¶ 16; Dkt. No. 5-1 § 13.) Thus, absent any applicable defenses, the parties' dispute must be submitted to arbitration, as it arises out of the contract.

Crowley seeks judgment on the pleadings based on several defenses to arbitration: state insurance law; the doctrine of laches; and a contract provision that purports to bar third-party recovery. The Court addresses each argument in turn.

**A.   State Insurance Law**

Crowley—which was insured, in part, by Gramercy, an insolvent insurer—contends that

enforcement of the instant arbitration clause under the FAA is barred by state insurance law that prohibits subrogated claims against the insured of an insolvent insurer.  (Dkt. No. 10 ¶ 25.)

Some state law remains operative, and is not preempted by the FAA, under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*.  As relevant here, the McCarran-Ferguson Act precludes application of the FAA to contracts regulating insurance where such application would be contrary to state law.  *See Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 42 (2d Cir. 1995) (holding that state laws governing insurance company liquidation are preserved from preemption by the FAA).  The parties assume that Mississippi law applies,[1] and the Court thus evaluates whether the operative state law, the Mississippi Insurance Guaranty Association Law, Miss. Code Ann. § 83-23-101 *et seq.* (the "MIGA Act"), bars the FAA's application to the instant suit.

The MIGA Act creates a guaranty association that steps in to perform obligations of insolvent insurers, *id.* § 83-23-111, to protect against "financial loss to claimants or policyholders because of the insolvency of an insurer," *id.* § 83-23-103.  The statute also allocates losses from insolvency to various parties and specifically "preclude[s] recovery . . . from the insured of any insolvent carrier to the extent of the policy limits."  *Id.* § 83-23-109(f).

Crowley argues that the MIGA Act establishes an absolute bar to subrogation against the insured where any of its insurers has become insolvent.  (*See* Dkt. No. 13 at 3.)  But the statute's terms prevent recovery only where there is a single, insolvent insurer and does not purport to bar

---

[1] Gramercy provided insurance to policyholders in a number of states, including, as relevant here, Mississippi.  The Court notes that the outcome of this case would be the same under other potentially applicable state statutes, like Florida's (the Florida Insurance Guaranty Association Act, Fla. Stat. Ann. § 631.50 *et seq.*), and it therefore does not engage in choice-of-law analysis as to which applies.

recovery where there are other, solvent insurers.[2]  In fact, the MIGA Act requires exhaustion of rights under policies with solvent insurers.  *See* Miss. Code Ann. § 83-23-123 ("Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is a covered claim, shall be required to exhaust first his right under such policy.").

Here, Crowley had insurance policies from more than one insurer.  While one of those insurers, Gramercy, is insolvent, at least one other, Beacon, is still solvent.  As a result, a claim against Crowley does not necessarily implicate the state insurance guaranty association.  *See, e.g.*, *Ross v. Can. Indem. Ins. Co.* 142 Cal. App. 3d 396, 404 (Cal. Ct. App. 1983) (finding that the California Insurance Guaranty Association is not implicated "when a secondary insurer is available in the event of an insolvent primary insurer, [because] the secondary insurer should be responsible"); *Kapp v. Home Depot, Inc.*, No. CV030825419, 2004 WL 574640, at *2 (Conn. Super. Ct. Mar. 8, 2004) (implying that the action could continue under the Connecticut Insurance Guaranty Association Act if there were additional, solvent insurers).  The MIGA Act, accordingly, does not bar recovery.

Because the operative state law does not preclude recovery, the application of the FAA does not contravene state law, per the McCarran-Ferguson Act's imperative.[3]  The Court thus can enforce this arbitration clause under the FAA.

---

[2] The cases cited by Crowley similarly speak only to the situation where there is a single, insolvent insurer.  *See, e.g.*, *Cordani v. Roulis*, 395 So.2d 1276, 1277 (Fla. App. 1981).

[3] Crowley's argument that Beacon would cover only a fraction of Zurich's claim (due to a $75,000 deductible) (Dkt. No. 16 at 1), does not change the result.  A potential limitation upon a solvent insurer's coverage does not bar recovery *per se* but may implicate the amount of recovery.  *See* Miss. Code Ann. § 83-23-123 ("Any amount payable on a covered claim . . . shall be reduced by the amount of any recovery under such [solvent] insurance policy.").

### B.  Doctrine of Laches

Crowley argues that the relief sought by Zurich is barred by the doctrine of laches because Crowley has been prejudiced by the delay in prosecuting this claim and the intervening insolvency of Gramercy.  (Dkt. No. 10 ¶ 27.)  Under the FAA, whether laches doctrine serves as a defense against enforcement of an arbitration agreement is, by default, an issue for the arbitrator to decide.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002).  Here, there is nothing in the Service Agreement or any other of Crowley's submissions that would displace this presumption.  Accordingly, the Court leaves for the arbitrator the question of whether a laches defense is appropriate.

### C.  Third-Party Claims

Last, Crowley argues that recovery is prohibited by § 12.4 of the Service Agreement between Adidas and Crowley, which purports to bar third parties from enforcing the contract's provisions.  (Dkt. 10 ¶ 28.)  Specifically, the Service Agreement states: "[T]his Contract shall not be construed to confer any benefit on any third party not a party to it nor shall the Contract provide any rights to such third party to enforce its provisions."  (Dkt. No. 5-1 § 12.4.)  But such a limitation of third-party enforcement of legal rights arising under the contract does not reach Zurich's right of equitable subrogation.  Zurich's equitable subrogation right does not arise from the contract's language or provisions, but instead allows Zurich to stand in Adidas's shoes to enforce the contract as a party to it.  *See Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 126 (S.D.N.Y. 1997), *aff'd sub nom.*, *Farrell Lines, Inc. v. Ceres Terminals, Inc.*, 161 F.3d 115 (2d Cir. 1998).  For this reason, § 12.4 of the Service Agreement does not bar Zurich's claims.

## IV.     Conclusion

For the foregoing reasons, Zurich's petition to compel arbitration is GRANTED. Crowley's motion for a judgment on the pleadings is DENIED.

The parties shall proceed to arbitration in accordance with the terms of the arbitration clause in the Service Agreement.

The Clerk is directed to close the motion at Docket Number 12 and to close the case.

SO ORDERED.

Dated: December 20, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge